1
2
3
4

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

5

6  MARGARITO MONTEZ,              )  1:12-cv-0502-AWI-BAM
                                          )

7
                          Plaintiff,       )

8
         v.                         )  ORDER ON MOTION TO COMPEL
                                          )  MENTAL EXAM

9
                                          )  (Doc. 35)

10 STERICYCLE, INC.,               )
                                          )

11
                   Defendants,   )

12 _____ )

13
14

15       On April 19, 2013, the parties in this action filed a Joint Statement of Discovery

16 Disagreement. (Doc. 35). In the joint statement, Defendant Stericycle, Inc. ("Stericycle") seeks a

17 motion to compel an independent mental examination of Plaintiff Margarito Montez ("Plaintiff")

18 pursuant to Federal Rule of Civil Procedure 35. The Court deemed the matter suitable for decision

19 without oral argument pursuant to Local Rule 230(g). Having considered the joint statement, and

20 the Court's file, the Court DENIES Defendant's Motion to Compel a Mental Examination. (Doc.

21 35).

22                   **FACTUAL AND PROCEDURAL BACKGROUND**

23       Plaintiff Margarito Montez filed this suit in the Superior Court of California, Fresno County

24 on February 10, 2012. Stericycle removed the matter to this Court on April 2, 2012. According to

25 the Complaint, Plaintiff worked as a full time route driver for Stericycle until his termination on

26 January 6, 2011. (Pl's Complaint ("Compl"). ¶ 12, Doc 1-1). Prior to his termination, Plaintiff

27

28                           1

injured his knee on the job while exiting his vehicle during one of his medical waste pickups. Plaintiff alleges that he was seen by a medical specialist and was informed that his work related injury qualified for protection under the Family and Medical Leave Act ("FMLA").  Plaintiff's FMLA leave began on September 10, 2010.  Compl. ¶ 14.   When Plaintiff asked his Stericycle supervisor Chad Willhoite about his FMLA leave, Plaintiff alleges that he was told he was ineligible for FMLA because he was under the workers' compensation system.  Compl. ¶ 15.  Plaintiff proceeded with the belief that FMLA was inapplicable to his injury.  Compl. ¶ 16.

Although Plaintiff's physician released him for light duty work on October 10, 2010, he was unable to return to full work duty until after undergoing surgery to repair his torn meniscus.  When Plaintiff asked if he could pick up light duty shifts, Plaintiff's supervisor told him to return home until he could obtain a full release to return to work.  After waiting to get surgery approved under the workers' compensation system, Plaintiff again called Stericycle and asked to return to work.  Area Safety Manager Michael Storie told Plaintiff that he was unable to return to work until the surgery was complete, but that he would try to expedite the scheduling of Plaintiff's surgery. Compl. ¶ 18.

Plaintiff was terminated on January 6, 2011, by letter, due to the exhaustion of FMLA leave. Compl. ¶ 20.  Plaintiff underwent a successful surgery to repair his knee on January 21, 2011 and was fully released by his doctor to "usual and customary duties" on March 21, 2011.

In his suit, Plaintiff asserts several causes of action for disability discrimination and retaliation.  He seeks compensation for lost past and future earnings, as well as for the emotional anguish he suffered as a result of his unlawful termination.  Compl. ¶ 23, 26.

The parties exchanged discovery requests and Stericycle deposed Plaintiff on October 23, 2012.  At his deposition, Plaintiff testified that after his termination his fiancé accused him of being "a different person."  (Pl.'s Deposition, 281:1-7, Doc. 23, Ex. 2).  His fiancé called off their engagement explaining to Plaintiff that he had changed and was now always worried and angry.  *Id.* Following Plaintiff's deposition, Stericycle requested that Plaintiff appear for a mental examination pursuant to Rule 35.  Plaintiff's counsel refused, responding that given the deposition testimony of his client, he did not believe an examination was warranted.

Stericycle filed the instant motion to compel on March 7, 2013.  On March 29, 2013, Plaintiff filed his opposition stating that the parties had not properly met and conferred.  On April 4, 2013, the Court instructed the parties to meet and confer in a good faith effort to resolve the parties' differences and then file a joint statement if the parties are unable to resolve their discovery dispute.

On April 19, 2013, the parties filed a joint statement of discovery dispute.  (Doc. 35).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure Rule 35, Stericylce seeks an independent mental examination of Plaintiff by its retained expert, neuropsychologist, Dr. Howard Glidden in Fresno, California. The examination will relate to Plaintiff's alleged emotional injuries resulting from his termination from Stericycle.

In relevant part, Rule 35(a) provides:

> (1) In General. The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.

To justify a mental examination under Rule 35, Stericycle must demonstrate (a) that Plaintiff has placed his mental condition "in controversy," and (b) "good cause" for the examination. *Schlagenhauf v. Holder*, 379 U.S. 104 (1964). "Good cause" generally requires a showing of specific facts justifying discovery. Factors that courts have considered include, but are not limited to: (1) the possibility of obtaining desired information by other means, (2) whether plaintiff plans to prove his claim through testimony of expert witnesses, (3) whether the desired materials are relevant, and (4) whether plaintiff is claiming ongoing emotional distress. *See Turner v. Imperial Stores*, 161 F.R.D. 89, 97-98 (S.D. Cal. 1995) (expert testimony); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995) (ongoing emotional distress); *Schlagenhauf*, 379 U.S. at 118-119 (availability by other means).

Even if good cause is shown, the Court retains discretion to determine whether to order an examination. *See Williams v. Troehler*, No. 08-cv-1523, 2010 U.S. Dist. LEXIS 6676, at *11 (E.D. Cal. Jan 6, 2010) (citing *Stinchcomb v. United States*, 132 F.R.D. 29, 30 (E.D. Pa.1990)).  Although the rule is to be construed liberally to allow the examination, the Court must take into account the interest of the party to be examined in avoiding unnecessary invasion of privacy balanced against

the moving party's right to a fair trial. *Id.* A general or garden variety allegation of emotional

distress is insufficient to place an individual's mental condition in controversy. *Id.*

### DISCUSSION

Stericyclye argues that a mental exam is necessary: (1) Plaintiff placed his mental condition

"in controversy" by seeking damages for emotional pain and suffering related to the termination of

his employment; (2) the dissolution of Plaintiff's engagement to his long-time fiancé constitutes

unusually severe emotional distress; and (3) Plaintiff has not sought any treatment for his emotional

distress and thus the extent of his emotional damages cannot be explored without an examination.

Plaintiff counters that nothing in the record supports Defendant's request for a mental

examination.  Plaintiff makes three primary arguments.  First, Plaintiff argues he never placed his

mental condition "in controversy" because he never claimed that his personality changed as a result

of his termination.  He simply reiterated the comments his fiancé expressed to him about her reasons

for ending their relationship.  Second, Plaintiff urges that he only seeks damages for garden variety

emotional distress which does not rise to the level of "unusually severe emotional distress."  At his

deposition, Plaintiff testified that his fiancé told him he was angry and worried after the termination.

Plaintiff argues that anger and worry are natural emotions stemming from a wrongful termination

and do not rise to the level of severe emotional distress.  Finally, Plaintiff argues that none of the five

factors identified in *Turner* are present.  *Turner*, 161 F.R.D. at 95.[1]  According to *Turner*, "courts

will order plaintiffs to undergo mental examinations where the cases involve, in addition to a claim

of emotional distress, one or more of the following: 1) a cause of action for intentional or negligent

infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder;

3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support

a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is 'in

controversy' within the meaning of Rule 35(a)." *Id.* at 95.

---

[1]      While the Ninth Circuit has not adopted *Turner*, many courts have followed its parameters.  Also, the *Turner* opinion has been given significant weight as it has been cited by both WRIGHT & MILLER, *Federal Practice and Procedure*, and The Rutter Group, *California Practice Guide*, *Federal Civil Procedure Before Trial.  See Houghton v. M&F Fishing, Inc.*, 198 F.R.D. 666, 668 (S.D. Cal. 2001).  Accordingly, this Court relies on the careful analysis set forth in *Turner.  Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D.Cal. 1995).

The facts here are similar to the facts in *Rund v. Charter Communications, Inc.* 2007 U.S. Dist. LEXIS 10993 (E.D. Cal. Jan. 30, 2007). In *Rund*, an employment action, Plaintiff worked for Defendant Charter Communications as a cable installer. While working for Defendant, Plaintiff took a leave of absence to have knee surgery. *Id.* at *4. After the surgery, Plaintiff's treating physician released him to work with certain limitations. Plaintiff asked Defendant to accommodate his new work restrictions and Defendant declined. Defendant later terminated Plaintiff explaining that the company could not afford to maintain a full-time, light-duty position in Rund's regional office. *Id.* at *9. Plaintiff brought suit alleging various disability discrimination related claims. In his complaint, Plaintiff alleged that Defendant's actions caused him "severe" metal anguish. However, in opposition to Defendant's motion to compel a mental examination, Plaintiff declared that he had not undergone treatment for emotional or psychological reasons. Plaintiff also stated that he did not tender an expert witness for his emotional distress and that any previous emotional trauma he experienced had resolved. *Id.* at * 3. He also indicated that he was not claiming to suffer any specific psychiatric injury. Defendant responded that despite Plaintiff's declaration that his emotional distress had resolved, a mental examination was necessary to assess Plaintiff's allegations of ordinary distress—an argument the Court called oxymoronic. *Id.* at * 6. In finding that Plaintiff had only presented a routine amount of emotional upset, the Court stated:

> There is no doubt that the ordinary person would suffer temporary distress if he were unlawfully terminated from employment he otherwise desired to retain. There is no need to conduct a mental examination, or have medical personnel testify to such, for the very reason that such distress is normal and understandable by the lay factfinder. That is, if the jury finds that defendant acted as plaintiff alleges, the concomitant ordinary distress is almost a given. Expert testimony would be inadmissible. Fed. R. Ev. 702 (expert testimony must assist the trier of fact in understanding evidence beyond the ken of most lay persons).

Further, in finding that Plaintiff's emotional state was not in controversy, the *Rund* court emphasized that key to its decision was Plaintiff's abandonment of any claim for serious psychological injury and that plaintiff "made it crystal clear that he ha[d] not sought medical treatment, and would not be presenting any medical evidence concerning emotional injury." *Id.* at *2. The Court refused to issue a mental examination order stating that it would merely satisfy Defendant's idle curiosity.

As in *Rund*, this Court finds that Plaintiff has not placed his mental injury in controversy as

Plaintiff's mental anguish claims are those garden-variety emotional distress claims naturally flowing from an unlawful termination.  Here, Plaintiff has not undergone mental health treatment for emotional or psychological reasons and he does not claim an ongoing mental injury.  Further, Plaintiff never made a claim for serious psychological injury and there is no indication that he will attempt to offer medical evidence to support his emotional distress damages.  Consequently, a mental examination is not warranted here because Defendant is unable to establish that Plaintiff seeks to recover anything beyond damages equated with a "garden-variety claim of emotional distress" normally associated with or attendant to the experience of an unexpected termination. *See also Houghton v. M&F Fishing, Inc.*, 198 F.R.D. 666 (S.D. Cal. 2001)(Court refused to order mental examination where Plaintiff expressly denied severe emotional distress and there were no claims of intentional or negligent infliction of emotional distress or specific allegation of mental or psychiatric injury); *see also Large v. Regents of the Univ. of Cal.*, 2012 U.S. Dist. LEXIS 119265 (E.D. Cal. Aug. 21, 2012) (Court found good cause to compel IME because Plaintiff claimed to be suffering from PTSD—a "specific mental or psychiatric injury or disorder," and planned to call expert witnesses); *Barsamian v. City of Kingsburg*, 2008 U.S. Dist. LEXIS 44778, at * 6 (E.D. Cal. May 22, 2008) (Court found good cause for mental examination where Plaintiff alleged her mental health was both severe and permanent and alleged causes of action for negligent infliction of emotional distress and intentional infliction of emotional distress).

Additionally,  a mental examination is not warranted here as none of the five *Turner* factors are present. The Court in *Turner* explained that Rule 35 was not meant to be applied in so broad a fashion as to allow courts to order a mental examination whenever a plaintiff claimed emotional distress. *Turner*, 161 F.R.D. at 97.  Therefore, courts evaluating a Rule 35 motion should not order mental examinations unless the case involves other factors surpassing  a generic claim of emotional distress.  *Turner* is not satisfied here because: (1) Plaintiff is not asserting a cause of action for intentional or negligent infliction of emotional distress; (2) he is not alleging a specific mental or psychiatric injury or disorder; (3) he has not alleged unusually severe emotional distress; (4) he does not plan on offering expert testimony to support an emotional distress claim; and (5) he does not concede that his mental condition is in controversy.

1    Based on all of the above, a psychiatric examination of Plaintiff is not warranted.

2                                    **CONCLUSION**

3    Accordingly, IT IS ORDERED that Defendant's motion to compel Rule 35 mental

4  examination is DENIED for the reasons set  forth in this order.

5    **IT IS SO ORDERED.**

6  **Dated:**   **May 16, 2013**                    **/s/ Barbara A. McAuliffe**
                                          **UNITED STATES MAGISTRATE JUDGE**